FILED

May 5, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 8:36 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT MURFREESBORO

| | |
|---|---|
| ARTIE PIERCE,<br>　　　　Employee, | Docket No.: 2014-05-0034 |
| v. | State File No.: 90703-2014 |
| METRO INDUSTRIAL,<br>　　　　Employer. | Judge Dale Tipps |

## COMPENSATION HEARING ORDER

This matter came before the undersigned Workers' Compensation Judge on April 26, 2016, for a Compensation Hearing, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issues are: (1) whether the employee, Artie Pierce, sustained an injury arising primarily out of and in the course and scope of his employment with the employer, Metro Industrial; (2) whether Mr. Pierce is entitled to additional temporary disability benefits, and if so, in what amount; (3) whether Mr. Pierce is entitled to permanent disability benefits and (4) whether Mr. Pierce is entitled to past or future medical benefits.[1]

For the reasons set forth below, this Court finds that Mr. Pierce established by a preponderance of the evidence that he sustained an injury primarily arising out of and in the course and scope of his employment with the Employer, Metro Industrial. Accordingly, the Court finds that Mr. Pierce is entitled to future medical benefits pursuant to Tennessee Code Annotated section 50-6-204(b)(1) (2015).

### History of Claim

Mr. Pierce is a thirty-nine-year-old resident of Franklin County, Tennessee. On December 4, 2014, he filed a Petition for Benefit Determination (PBD) seeking temporary disability and medical benefits for injuries to his back, arm, and hand he alleged to have sustained while working for Metro. Following an Expedited Hearing, Chief Judge Kenneth

---

[1] A complete listing of the technical record, stipulations, and exhibits admitted at the Compensation Hearing is attached to this Order as an appendix.

M. Switzer issued an interlocutory order requiring Metro to provide a panel of physicians for evaluation and treatment of Mr. Pierce's hypertension to enable him to participate in a functional capacity evaluation (FCE) ordered by his treating physician. Metro was also required to pay past due and continuing temporary disability benefits.

During the Compensation Hearing, Mr. Pierce failed to testify precisely as to how his injury occurred. However, the Court gleaned a description of the accident from documentary evidence admitted during the hearing.

Mr. Pierce signed a First Report of Injury on November 6, 2014, that the Court admitted into evidence without objection. The report gives an injury date of September 25, 2014, and indicates Mr. Pierce, while "trying to move fixed parts to pack out," got tangled and pulled his back and arm. (Ex. 2.)

Medical records show Mr. Pierce reported being injured doing his normal job on September 25, 2014. He said he was carrying about sixty pounds of rubber parts on his left shoulder at work when the parts got tangled and caused him to fall. He reported having pain to his supervisor, who eventually sent him to a walk-in clinic. A nurse in the clinic did x-rays, gave Mr. Pierce a splint for his left thumb, and recommended an orthopedic evaluation. (Ex. 1.)

An orthopedic surgeon, Dr. James Rungee, saw Mr. Pierce on December 4, 2014, for complaints of pain in his back, left elbow, wrist, and thumb. Dr. Rungee examined Mr. Pierce and reviewed radiographs of his left elbow, left hand, and lumbar spine. His impression was, "Two and a half months of low back pain, left elbow pain, and left thumb contracture with stiffness with paucity of clinical findings." He did not feel any specific treatment or further evaluation was necessary, but he recommended a FCE to determine Mr. Pierce's physical capabilities. He returned Mr. Pierce to work with lifting restrictions of ten pounds. *Id.*

Mr. Pierce returned to Dr. Rungee on October 28, 2015, for follow-up after his FCE. Dr. Rungee noted the FCE was a valid study that showed Mr. Pierce "could function in a material handling level at a light physical demand category but from his cardiovascular reserve he can only function at a sedentary level." He informed Mr. Pierce that the FCE findings would be his permanent restrictions. Dr. Rungee assessed left hand pain, left upper arm pain, and bilateral low back pain "with sciatica presence unspecified." *Id.*

The Court admitted into evidence Dr. Rungee's C-32 Form Standard Medical Form. Dr. Rungee indicated it was more likely than not that Mr. Pierce's injury arose primarily out of and in the course and scope of his employment. He noted Mr. Pierce reached maximum medical improvement (MMI) on December 4, 2014, and stated Mr. Pierce retained no permanent impairment as a result of his accident. *Id.*

At the Compensation Hearing, Mr. Pierce asserted he is entitled to temporary disability benefits, permanent disability benefits, and continuing medical treatment. He disputed Dr. Rungee's methods and conclusions, as well as the information contained in the C-32 Form. He argued that it is not possible for him to have no permanent impairment when he has significant permanent physical restrictions that will affect his ability to work.

Metro countered that Mr. Pierce failed to meet his burden of proving a compensable injury. In the alternative, it argued Mr. Pierce is not entitled to any permanent disability benefits because he failed to prove he retains any permanent impairment arising out of his alleged work injury.

## Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction favoring neither Mr. Pierce nor Metro. Tenn. Code Ann. § 50-6-116 (2015). Mr. Pierce has the burden of proof on all essential elements of the claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). "[A]t a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff*, No. 2014-05-0005, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Tenn. Workers' Comp. App. Bd. Nov. 9, 2015). *See also* Tenn. Code Ann. § 50-6-239(c)(6) (2015) ("[T]he employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence.").

*Compensability*

To be compensable under the Workers' Compensation Law, an injury must arise primarily out of and occur in the course and scope of the employment. *McCaffery v. Cardinal Logistics*, No. 2015-08-0218, 2015 TN Wrk. Comp. App. Bd. LEXIS 50, at *8-9 (Tenn. Workers' Comp. App. Bd. Dec. 10, 2015); *see also* Tenn. Code Ann. § 50-6-102(14) (2015). The term "injury" is defined as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* For an injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2015).

Mr. Pierce reported to Dr. Rungee he was doing his normal job on September 25, 2014, when the parts he was carrying got tangled, causing him to fall. Based on this history,

Dr. Rungee opined that, more likely than not, Mr. Pierce's injury arose primarily out of and in the course and scope of his employment. Metro presented no evidence rebutting this conclusion. The Court therefore finds Mr. Pierce met his burden of proving he suffered a left hand, left upper arm, and bilateral low back injury arising primarily out of and in the course and scope of his employment with Metro.

*Entitlement to Medical Benefits*

Having found Mr. Pierce sustained compensable injuries to his left hand, left upper arm, and bilateral low back, the Court turns to the issue of entitlement to medical benefits. Under the Workers' Compensation Law, "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A) (2015). "The injured employee shall accept the medical benefits. . . provided that in any case when the employee has suffered an injury and expressed a need for medical care, the employer shall designate a group of three (3) or more independent reputable physicians. . . from which the employee shall select one (1) to be the treating physician." Tenn. Code Ann. § 50-6-204(a)(3)(A)(i) (2015).

The parties submitted no evidence as to whether Mr. Pierce selected Dr. Rungee from a panel of physicians. However, it was undisputed that Dr. Rungee provided authorized treatment for Mr. Pierce and Mr. Pierce acquiesced to that treatment. Further, although Mr. Pierce disagreed with Dr. Rungee's conclusions and, to some extent, his treatment, Mr. Pierce presented no evidence or argument that he was entitled to another panel or another treating physician. The Court finds, therefore, that Mr. Pierce is entitled to continuing treatment with the authorized treating physician, Dr. Rungee.

*Eligibility for Temporary Disability Benefits*

An injured worker is eligible for temporary total disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015) (citing *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978).

Mr. Pierce presented no medical opinions establishing any period of total disability and, in fact, Dr. Rungee opined Mr. Pierce suffered no temporary total disability as a result of his injury. The Court finds Mr. Pierce has not established entitlement to temporary total disability benefits.

Temporary partial disability benefits, a category of vocational disability distinct from temporary total disability, are available when the temporary disability is not total. *Id.; see also* Tenn. Code Ann. § 50-6-207(1)-(2) (2015). Specifically, "[t]emporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Id.* (citing *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005)). Thus, in circumstances where the treating physician has released the injured worker to return to work with restrictions prior to maximum medical improvement, and the employer either (1) cannot return the employee to work within the restrictions or (2) cannot provide restricted work for a sufficient number of hours and/or at a rate of pay equal to or greater than the employee's average weekly wage on the date of injury, the injured worker may be eligible for temporary partial disability. *Id.*

Dr. Rungee's records are somewhat contradictory on the matter of temporary restrictions. His December 4, 2014 office note recommended an FCE and released Mr. Pierce to return to work with ten-pound lifting restrictions "until we see him back." Based in part upon these restrictions, the Expedited Hearing Order required Metro to pay temporary partial disability benefits to Mr. Pierce. Then, in the February 9, 2016 C-32 Form, Dr. Rungee indicated Mr. Pierce reached MMI on December 4, 2014.

Ultimately, the question of temporary partial disability comes down to the fact that Dr. Rungee's MMI opinion is unrebutted by any medical evidence. This establishes Mr. Pierce's MMI date as December 4, 2014, and he presented no medical evidence of temporary partial disability after that date. The Court therefore finds Mr. Pierce has not established entitlement to temporary partial disability benefits.

*Permanent Partial Disability Benefits*

Permanent Partial Disability benefits are owed when an employee sustains a permanent impairment from a work injury but is still able to work. "In case of disability partial in character but adjudged to be permanent, at the time the injured employee reaches maximum medical improvement the injured employee shall be paid sixty-six and two-thirds percent (66 2/3%) of the employee's average weekly wages for the period of compensation, which shall be determined by multiplying the employee's impairment rating by four hundred fifty (450) weeks." Tenn. Code Ann. § 506-207(3)(A) (2015). The only impairment rating admitted into evidence was the 0% rating given by Dr. Rungee. As this was unrebutted by any other medical opinion, the Court finds Mr. Pierce is not entitled to any permanent disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. The Court finds Mr. Pierce suffered a compensable injury to his left hand, left upper arm, and bilateral low back.

2. Mr. Pierce's claims for permanent partial disability benefits and additional temporary disability benefits are denied.

3. Mr. Pierce shall receive lifetime future medical benefits pursuant to Tennessee Code Annotated section 50-6-204(b)(1) (2015). His authorized treating physician is Dr. Rungee.

4. The Court taxes the costs of this cause, in the amount of $150.00, against Metro pursuant to Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2015), to be paid within five days of this order becoming final.

   **ENTERED this the 5ᵗʰ day of May, 2016.**

   _____
   **Judge Dale Tipps**
   **Court of Workers' Compensation Claims**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Compensation Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within thirty calendar days* of the date the Workers' Compensation Judge entered the Compensation Hearing Order.

3. Serve a copy of the Compensation Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on

a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of lndigency in accordance with this section shall result in dismissal of the appeal.

5. The party filing the notice of appeal, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. Alternatively, the party filing the appeal may file a joint statement of the evidence within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the Workers' Compensation Judge before the record is submitted to the Clerk of the Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03 (2015).

6. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Workers' Compensation Appeals Board, the appeal will be docketed and assigned to an Appeals Board Judge for review. At that time, a docketing notice shall be sent to the parties. Thereafter, the party who filed the notice of appeal shall have fifteen calendar days after the issuance of the docketing notice to submit a brief to the Appeals Board for consideration. Any opposing party shall have fifteen calendar days after the filing of the appellant's brief to file a brief in response. No reply briefs shall be filed. Briefs shall comply with the Practice and Procedure Guidelines of the Workers' Compensation Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03(6) (2015).

## APPENDIX

Exhibits:
1. C-32 Standard Form Medical Report of Dr. James Rungee
2. First Report of Injury
3. Medical Case Management Closure Report – Identification Only
4. Wikipedia definition of sciatica – Identification Only
5. Social Security Notice
6. Star Physical Therapy Records – Identification Only

Technical Record:[2]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Pre-Hearing Statement
5. Expedited Hearing Order
6. Initial Hearing Order

---

[2] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Compensation Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 5th day of May, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Artie Pierce | X | | X | Pierceartie3435@yahoo.com |
| Michael Jones | | | X | mjones@wimberlylawson.com |

_____

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov